Mary Kate REILLY, Plaintiff–Appellant,

v.

WAUKESHA COUNTY, WISCONSIN, et al., Defendants–Appellees.

No. 92–1475.

United States Court of Appeals, Seventh Circuit.

Submitted March 30, 1993.

Decided May 18, 1993.

Paul F. Reilly, Hippenmeyer, Reilly & Moodie, Waukesha, WI, for plaintiff-appellant.

Jeffrey W. Bartelt, James R. Sommers, Hunters & Sommers, Waukesha, WI, for defendant-appellee.

Before BAUER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Waukesha County, Wisconsin, maintains both secure and non-secure "shelter care" housing for youngsters who have come into public custody. State regulations instruct local governments to have staff on duty at all times and add: "No staff member responsi-

ble for supervision of juveniles in a secure detention living unit may during the same time period have responsibility for the supervision of juveniles in a non-secure unit." Wis.Admin. Code HSS § 346.08(5)(b)(3). Steven Turner, supervising the night shift at Waukesha's juvenile housing complex, repeatedly violated this rule—whether because the County had trouble hiring the personnel needed to comply, or in order to save the County money, the record does not reveal. Child care workers instructed to supervise both the secure and shelter care units started asking Turner to put these orders in writing. For a while Turner complied, but he ceased doing so on instructions from his supervisor William Weber, manager of the child care center. When Mary Kate Reilly reported for duty on December 17, 1989, Turner assigned her to the non-secure unit and instructed her to perform "bed checks" on the two female detainees in the secure unit. Reilly asked for a written order, which Turner did not supply. Reilly wrote Weber a memo protesting this assignment and then spent her entire shift in the non-secure unit. Weber fired her for insubordination.

The case began in state court as a wrongful-discharge action under Wisconsin law. Defendants moved for summary judgment, contending that Reilly, an employee at will, could be dismissed for any reason. She rejoined that even an at-will employee has protection from a dismissal that "clearly contravenes the public welfare and gravely violates paramount requirements of public interest." *Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 573, 335 N.W.2d 834, 840 (1983). Defendants observed that *Brockmeyer* added: "The public policy must be evidenced by a constitutional or statutory provision." *Ibid.* Turner instructed Reilly to violate a regulation, not a statute, and that, defendants insisted, made all the difference.

On February 13, 1991, while the state judge had the motion under advisement, Reilly amended her complaint to add a claim under 42 U.S.C. § 1983. The revised complaint asserted that the discharge violated the first amendment by penalizing her for speech—that is, for her oral and written contention that Turner should follow the reg-

ulation. On February 22 the state judge granted the defendants' motion and dismissed the. wrongful-discharge claim, while reserving the § 1983 claim for future decision. On March 11 defendants removed the action to federal court. This was timely under 28 U.S.C. § 1446(b), which allows removal within 30 days of an amendment adding a federal claim to a case that was not removable as initially filed. The parties are not of diverse citizenship, so only the introduction of a federal claim made the case removable. The district judge dismissed the County for lack of evidence that it had a policy of firing employees in retaliation for speech. See *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (Reilly does not contest this conclusion.) A jury later concluded that Turner and Weber, the two remaining defendants, did not violate the first amendment.

■ Reilly argues that the instruction to cover both units violated the due process clause .of the fourteenth amendment by exposing her to unsafe working conditions. Aside from the fact that the record contains no evidence that it is more hazardous for a child care worker to shuttle between units than to stay in one for a full shift, there is the inconvenience that the due process clause does not create an entitlement to low-risk employment. We so held seven years ago. *Walker v. Rowe,* 791 F.2d 507 (7th Cir.1986). The Supreme Court agreed two months before Reilly filed her brief on appeal. *Collins v. Harker Heights,* — U.S. —, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Reilly's lawyer ignored both cases. We would be considering the possibility of sanctions for this frivolous argument, see Fed.R.App.P. 38 and Circuit Rule 38, except for the fact that defendants ignored this entire section of Reilly's brief. Both litigants and the court are entitled to better performance from counsel.

Now that the jury has resolved against her the contention that Weber and Turner fired her on account of her oral statements and the memo she wrote, Reilly is reduced to contending that failure to perform the bed checks was itself protected speech. The district judge removed this issue from the jury's consideration. The court might have ruled, though it did not, that leaving the secure unit

unattended, after it was too late for the defendants to obtain another worker, was a needlessly disruptive way to express a position. See *Connick v. Myers,* 461 U.S. 138, 154, 103 S.Ct. 1684, 1694, 75 L.Ed.2d 708 (1983), and, e.g., *Marquez v. Turnock,* 967 F.2d 1175, 1179 (7th Cir.1992). Instead it held that refusal to follow a supervisor's express orders is action rather than speech.

■ People may do things (or not do them) in order to send messages. *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), holds that the government may react to the medium, so long as it is indifferent to the message. See *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (state may ban ingestion of peyote even though the user has a religious purpose); *FTC v. Superior Court Trial Lawyers Ass'n,* 493 U.S. 411, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990) (boycotting criminal defense work to send a message about the adequacy of representation may be regulated like other concerted economic activity); *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (sleeping in the park to send a message about homelessness may be regulated like other camping). See also *R.A.V. v. St. Paul,* — U.S. —, —, 112 S.Ct. 2538, 2544, 120 L.Ed.2d 305 (1992) ("nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses"). Reilly therefore needs evidence that her reasons rather than her actions led to the sacking. She produced none. Nothing in the record implies that workers who refused direct orders for reasons unrelated to expression—say, out of sheer orneriness—kept their jobs. There was accordingly no factual dispute for a jury to resolve.

■ What remains is the claim under Wisconsin law. After Reilly filed her appellate brief, the Supreme Court of Wisconsin held that a regulation may establish a "fundamental and well-defined public policy" that could protect an at-will employee from discharge. *Winkelman v. Beloit Memorial Hospital,* 168 Wis.2d 12, 483 N.W.2d 211 (1992). Reilly seeks the benefit of this decision, while defendants insist that we lack jurisdiction be-

cause the order granting summary judgment in their favor was issued by the state court before removal. Only the Supreme Court of the United States has appellate jurisdiction over a state court. The judgment under review was entered, however, by a United States district court. One of the rulings that gave shape to that judgment was made by a state judge, and the rest by a federal judge and jury, but the final decision, the thing that 28 U.S.C. § 1291 gives us the power to review, was the product of the district court alone. After removal, a federal court "takes up the case where the State court left it off." *Duncan v. Gegan*, 101 U.S. 810, 812, 25 L.Ed. 875 (1880). District judges need not reopen the state judge's rulings, *Ex parte Fisk*, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885), and an appeal at the end of the case brings the whole dispute here, just as if every interlocutory ruling had been made by the federal judge. *Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir.1991) ("the district judge was entitled not to reexamine the state judge's ruling. But [the losing party] was equally entitled to appellate review of that ruling."). Cf. *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 435–38, 94 S.Ct. 1113, 1122–24, 39 L.Ed.2d 435 (1974). Now that the case is before us, we may examine all of the antecedent interlocutory rulings, including those rendered by the state judge and absorbed into the district court's final judgment.

■ We would not labor this point except for *Jackson v. American Savings Mortgage Corp.*, 924 F.2d 195 (11th Cir.1991), which holds that federal courts of appeals may not review decisions taken by a state court prior to removal unless the federal district court reconsiders the question and renders its own decision. That conclusion, for which the eleventh circuit cited no authority, is equivalent to saying that the state court's rulings do not survive removal—or, alternatively, that they are not subject to appellate review in any court, state or federal. *Jackson* reflects unease with the novel procedure involved: the case had been removed after final decision by the state trial court. Removal during an appeal, something authorized only recently (and then only when federal banking regulators take over a financial institution during the litigation, 12 U.S.C.

§ 1819(b)(2)), made it look as if the court of appeals were being asked to review the decision of a state trial court. Yet the banking agency had removed the case to district court, as the statute specifies, and then appealed from the district court's judgment. Removal in mid-appeal is an unsettling procedure, but once we accept that Congress has authorized this step, see *In re Meyerland Co.*, 960 F.2d 512 (5th Cir.1992) (in banc), there is no reason to require busy federal district judges to revisit questions resolved before removal. *Jackson* is inconsistent with our decision in *Johnson* and, we believe, with the principles animating cases such as *Duncan*, *Fisk*, and *Granny Goose*. A state court's decisions prior to removal are merged into the final judgment and may be reviewed on appeal whether or not the district court elects to reexamine them after removal. See also *Savell v. Southern R.R.*, 93 F.2d 377, 379 (5th Cir.1937).

What, then, are we to make of *Winkelman?* The Supreme Court of Wisconsin held that a regulation may establish a fundamental policy, not that every regulation does establish such a policy. 168 Wis.2d at 24, 483 N.W.2d at 215 ("we do not hold that all administrative rules implicate fundamental public policy."). Does Wis.Admin. Code HSS § 346.08(5)(b)(3) create a fundamental policy? Would Wisconsin really give persons caring for juvenile detainees the right to leave a custodial unit unsupervised? There are good and bad ways to oppose illegal orders. Reilly could not have shot Turner in order to protest the order; leaving wards of the state unattended is more civil but places the interests of the employee ahead of the interests of the children in a way that a state might believe the employer need not tolerate.

The best way to find out how the courts of Wisconsin would deal with this situation is to ask. Certifying the question to the Supreme Court of Wisconsin is inappropriate; *Winkelman* establishes the major premise, and its application to particular regulations is an appropriate task for that state's trial and appellate courts. Now that the federal claims have been resolved, a district court is free to remand the case so that those courts may address the subject. *Carnegie–Mellon Uni-*

versity v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Cf. Wentzka v. Gellman, 991 F.2d 423, 425–26 (7th Cir.1993). Reilly did not seek a federal decision on this question, and the defendants are not entitled to one. Still, whether to remand resides in the district court's discretion, not ours. The judgment on Reilly's constitutional claims is affirmed. The judgment on the state claim is vacated, and the case is remanded with instructions to consider the effect of Winkelman or to remand the state claim to state court.