**RESOLUTION TRUST CORPORATION, as Receiver for First Home Savings Association and as Conservator for First Home Federal Savings Association, Appellant,**

v.

**A. Richard NERNBERG, t/d/b/a A.R. Building Company, and Baldwin Village Home Owners Association, a Not–For–Profit Corporation,**

**A. Richard Nernberg, Appellee.**

No. 93–3146.

United States Court of Appeals, Third Circuit.

Argued June 14, 1993.

Decided Aug. 17, 1993.

Jeffrey Ehrlich (argued), Resolution Trust Corp., Litigation Div., Washington, DC, for appellant.

Robert L. Potter (argued), Strassburger, McKenna, Gutnick & Potter, Pittsburgh, PA, for appellee.

Before: SCIRICA, COWEN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

After substituting itself as plaintiff in a suit pending before a state appellate court, the Resolution Trust Corporation, a federal agency, removed the case to the United States District Court. Reading the statute as permitting removal only when Resolution Trust was a defendant, the district court remanded to the state court. We reverse, construing the statute as enlarging Resolution Trust's venue options rather than restricting its power to remove. In the absence of applicable procedural rules, we adopt supervisory rules to aid district courts in disposition of cases removed after judgment in state courts.

I.

The First Home Savings Association prevailed in a mortgage foreclosure proceeding instituted in the Court of Common Pleas of Allegheny County, Pennsylvania, against A.

Richard Nernberg and others. Nernberg then appealed to the Superior Court of Pennsylvania. After briefs had been filed but before that court reached the appeal, Resolution Trust, as conservator of First Home, took control of the litigation and removed the case to the United States District Court for the Western District of Pennsylvania on August 11, 1992.

The district court concluded that the removal statute applicable to Resolution Trust, 12 U.S.C. § 1441a(*l*)(3)(A), did not govern when Resolution Trust was plaintiff and, accordingly, remanded the case to the state court. Resolution Trust has appealed pursuant to the specific provision of the removal statute, *id.* § 1441a(*l*)(3)(C), which allows the corporation to challenge a remand order.

The removal statute in effect as of February 1, 1992, and applicable to the case at hand reads:

> "(A) In general. The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the Corporation has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver of such institution."

*Id.* § 1441a(*l*)(3)(A). The district court read the last clause of the statute, "if the action, suit, or proceeding is brought against the institution or the Corporation as conservator or receiver," as limiting the removal power to only those actions in which Resolution Trust or a failed institution is defendant, regardless of which of the three venues is chosen.

■ Resolution Trust, on the other hand, reads the statute as one establishing a broad venue rather than one narrowing the power to remove. Resolution Trust would essen-

tially have this Court use the following format for the statutory language:

> Removal is permitted:
> (1) to the district court in the district where the state court suit was filed; or
> (2) to the district court for the District of Columbia; or
> (3) to the district court where the principal office of the institution is located if the action is brought against the institution or Resolution Trust as conservator or receiver.

Read in this style, the statute would permit removal in instances (1) and (2) when Resolution Trust is either plaintiff or defendant. Removal to the third venue, on the other hand, could only be effected if Resolution Trust is defendant. After looking to the language and purpose of section 1441a(*l*)(3)(A), we find that the district court erred and we adopt the interpretation of the statute suggested by Resolution Trust.

■ We must concede that the statute can successfully withstand the charge that it is clear beyond doubt. Generally, courts should apply the "plain meaning of legislation" except in instances where "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). However, that admonition is not determinative here because the language can be read to support both interpretations of the provision.

Because the removal statute is unclear, we must resort to other rules of statutory construction, a somewhat unsatisfactory process in which for every thrust, there is a parry, and for every positive statement, a negative is available. Thus, although "[a] statute cannot go beyond its text," sometimes "[t]o effect its purpose a statute may be implemented beyond its text." Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand.L.Rev. 395, 401–05 (1950), *reprinted in* Ruggero J. Aldisert, *The Judicial Process* 180–81 (1976). Moreover, "[w]here design has been distinct-

ly stated no place is left for construction," yet "[c]ourts have the power to inquire into real—as distinct from ostensible—purpose." *Id.*

Initially, we find some guidance from the "doctrine of the last antecedent." Under that canon, "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote." *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975); *United States ex rel Santarelli v. Hughes,* 116 F.2d 613, 616 (3d Cir.1940) (contrary "construction flies in the face of common sense in grammar hardened into law"); 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.33 (5th ed. 1992).

The use of a comma to set off a modifying phrase from other clauses may indicate that the qualifying language is to be applied to all of the previous phrases and not merely the immediately preceding phrases. *National Surety Corp. v. Midland Bank,* 551 F.2d 21, 34 (3d Cir.1977) (lack of a comma limited application of the qualifying language to the word immediately preceding it). Consequently, the lack of a comma before the last clause in the removal statute suggests that the limiting phrase applies only to the third clause.

We do not believe, however, that we should allow syntax to completely control the resolution of this issue and, thus, must find something a bit more substantial to support construction. *See Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1311 (9th Cir.1992). Here, additional support may be found in the "mischief" rule, one of the factors discussed in the venerable *Heydon's Case,* 76 Eng.Rep. 637 (Ex. 1584). That canon of construction directs a court to look to the "mischief and defect" that the statute was intended to cure. *Id.* at 638.

The current version of section 1441a(*l*)(3)(A) was enacted in haste at the end of the session in November, 1991, with little explanatory history. A report of the

House Committee on Banking, Finance and Urban Affairs indicates that the provision was being amended to add a third venue site to which removal was permissible. H.R.Rep. No. 358, 102d Cong., 1st Sess. at 39, *reprinted in* 1991 U.S.C.C.A.N. 1384, 1395. An earlier, defeated bill covering many other matters included a removal provision in the same language, but in an arrangement listing the three venue options following Roman numerals I, II, and III. *Id.* (discussing H.R. 3435, 102d Cong., 1st Sess. § 222 (1991)). In that earlier version, the "against the institution or the Corporation" limitation appeared as part of Roman numeral III's venue provision. Had that format been adopted in the legislation before us, Resolution Trust's argument would be considerably strengthened.

As the district court conceded, the predecessor statute would have allowed Resolution Trust to remove this action to the Western District of Pennsylvania, where First Home's principal place of business is located. The former version of the statute provided that Resolution Trust could remove an action to the United States district court where the institution's principal business is located "if the action, suit, or proceeding arises out of the actions of the Corporation" with respect to an institution for which Resolution Trust had been appointed conservator or receiver. 12 U.S.C. § 1441a(*l*)(3) (prior to the 1991 amendment).

One of the difficulties with the predecessor statute was that it did not permit removal to the district where the state suit had been filed if that was other than where the institution's home office was located. *See Hellon & Assocs., Inc. v. Phoenix Resort Corp.,* 958 F.2d 295, 299 (9th Cir.1992); *Resolution Trust Corp. v. Westgate Partners, Ltd.,* 937 F.2d 526, 528–31 (10th Cir.1991).[1] To evade this limitation, suits were removed to the federal court in the District of Columbia and then transferred to the district in which the state court suit had originally been filed pursuant to 28 U.S.C. § 1404(a) "for the conve-

---

1. Another court, however, permitted removal to the local federal district court under the general removal provisions of 28 U.S.C. § 1441(a) agreeing that although the former version of 12 U.S.C.

§ 1441a(*l*)(3) did not authorize such removal, neither did it prohibit removal to local federal court. *See Resolution Trust Corp. v. Lightfoot,* 938 F.2d 65, 67 (7th Cir.1991).

nience of parties and witnesses." *Id.* at 530 n. 6.

Thus, the process required to have the case heard in the proper federal court involved burdensome paper shuffling. The district court for the District of Columbia saw it as an unnecessary "exercise in legal gymnastics" and suggested that Congress revisit the removal provisions to consider whether parties will be forced to "first remove to this court, and then present a motion for transfer to a forum more suited to complete the litigation." *Piekarski v. Home Owners Sav. Bank,* 743 F.Supp. 38, 44 (D.D.C.1990); *see also Kirby v. Mercury Sav. & Loan Ass'n,* 755 F.Supp. 445, 447–48 & n. 3 (D.D.C.1990).

The current amendment solves that problem by allowing removal directly to the district in which the state court suit had originally been filed. *Hellon & Assocs.,* 958 F.2d at 299. We have found no indication that Congress had any intention of reducing Resolution Trust's ability to remove, a result that would follow if we adopted Nernberg's reading. Thus, the "mischief"—the circuitous procedure that was required to have the case adjudicated in the district where the litigation began—provides a reason for Congress to have acted as it did and gives support to the syntax argument.

The inconsistencies which would result from applying the last clause of the statute to all three of the preceding venue provisions provides further support for our rejection of Nernberg's proposed construction of section 1441a(*l*)(3)(A). The removal statute begins by stating that removal may be effected by Resolution Trust "in any capacity." [2] The last clause of the removal statute, on the other hand, singles out those suits brought against the corporation "as conservator or receiver," and does not refer to suits brought against Resolution Trust in its corporate capacity.

Were we to apply the last clause to all three of the preceding provisions, the phrase "in any capacity" in the preliminary clause would be meaningless. Thus, Congress could only have intended the limitation clause to apply to the third venue option.

We are persuaded that the statute precludes removal by Resolution Trust as a plaintiff only when removal is being effected to the district in which the principal office of the institution is located. In the other two circumstances, the venue provisions allow removal by Resolution Trust as either plaintiff or defendant. Consequently, we must reverse the district court's ruling that the statute did not authorize removal in this instance.

## II.

In the alternative, Nernberg argues that Congress did not intend Resolution Trust's removal power to extend to cases that had already proceeded to judgment in state court and had been taken to the state appellate system. Nothing in the statute refers to state cases on appeal and, according to Nernberg, Congress has never authorized removal of such cases. In the absence of specific language, he maintains that district courts have not been given the authority to remove state trial court judgments, citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983), and *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150–51, 68 L.Ed. 362 (1923).

Those two cases, however, turn on the statutory jurisdiction of the district courts and do not preclude grants of such authority by Congress. *See Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 349, 4 L.Ed. 97 (1816) (Congress "may authorize a removal either before or after judgment"); *see also In re Meyerland Co.,* 960 F.2d 512, 516 (5th Cir.1992) ("Under the *Rooker–Feldman* line

---

2. It is clear that Resolution Trust is empowered to act in one of three capacities—as a receiver, as a conservator or in its corporate capacity. *See* 12 U.S.C. § 1441a(b)(1)(B); *see also Howerton v. Designer Homes by Georges, Inc.,* 950 F.2d 281, 283 (5th Cir.1992) ("[t]he RTC, in its corporate capacity, is not liable for claims against the RTC in its capacity as conservator or receiver.").

There is a close parallel with the FDIC's enabling statute. *See Sierra Club, Lone Star Chapter v. FDIC,* 992 F.2d 545, 549 n. 4 (5th Cir.1993) (discussing different statutes which delineate the FDIC's various capacities); *Howell v. FDIC,* 986 F.2d 569, 574 (1st Cir.1993) (discussing the so-called "separate capacities" doctrine).

of cases, federal statute defines 'final state court judgments' as those 'rendered by the highest court of a state in which a decision could be had.' 28 U.S.C. § 1257(a).").

■ Nernberg contends that if Congress had intended such a break with tradition, it would have taken pains to make the point specifically in the statute. Although the argument is a legitimate one and has some strength, several Courts of Appeals have already decided that the Resolution Trust and FDIC provisions allow removal of cases that have already proceeded to judgment in state court and have been taken to the state appellate system. *See Lester v. Resolution Trust Corp.*, 994 F.2d 1247, 1253–54 (7th Cir.1993); *In re 5300 Memorial Investors, Ltd.*, 973 F.2d 1160, 1162 (5th Cir.1992); *Ward v. Resolution Trust Corp.*, 972 F.2d 196, 198 (8th Cir.1992); *In re Meyerland Co.*, 960 F.2d at 517 (discerning "no reason to confine the interpretation ... to actions that have not reached judgment" (citation omitted)); *Jackson v. American Sav. Mortgage Corp.*, 924 F.2d 195, 198 (11th Cir.1991); *cf.* 12 U.S.C. § 632 (limiting power of a Federal Reserve member bank to remove a suit to "anytime before the trial thereof").·

Although the arguments advanced by Nernberg and the dissenting judges in *Meyerland* are respectable, we believe that we should follow the Courts of Appeals for the Fifth, Seventh, Eighth, and Eleventh Circuits rather than create an intercircuit conflict on this matter of federal law.

## III.

Nernberg correctly points out that the lack of specificity in the statute about removal of appealed cases poses substantial procedural problems. The role that the district court is to play is left to conjecture and "field engineering."

Addressing these procedural problems, both the *Meyerland* and *Jackson* Courts started with the implicit assumption that the district court should not function in a purely appellate capacity in reviewing a state judgment. As the *Meyerland* Court said: "We make no indication of the propriety of such action because it is not necessary to force

district courts into this role when the other role available to them does not present such complex constitutional and jurisdictional issues." 960 F.2d at 520.

Although district courts do act in an appellate capacity in bankruptcy cases and, thus, are familiar with that function, they do so by virtue of explicit authority and procedural rules. That guidance is not available in cases removed by Resolution Trust. Therefore, like the Courts of Appeals for the Fifth and Eleventh Circuits, we will not impose an appellate role on the district courts and thus set up a system where there would be duplicative appeals, one to the district court and one to the Court of Appeals.

It should be noted that the statute authorizes removal to the "district court" not to a Court of Appeals. Thus, there is no authority to remove a case from the state appellate (or trial) court directly to the Court of Appeals. The question, then, is what the district court must do when it is presented with a judgment that has been taken to the state appellate court.

The *Jackson* Court emphasized that it was not a state appellate body and its role was to review the actions and judgments of a federal district court. 924 F.2d at 198. Hence, it required that a party in the removed case seeking to appeal must first move the district judge to modify or vacate the state court judgment. *Id.* at 199. Only after the district court rules on that motion, could an appeal be taken. As the Court explained, "[t]his procedure assures that alleged errors brought before this circuit [sic] for review are in fact as well as in theory the considered products of a district judge." *Id.*

Commenting on *Jackson*, the Court of Appeals for the Seventh Circuit conceded that "[r]emoval in mid-appeal is an unsettling procedure," but held that "[a] state court's decisions prior to removal are merged into the final judgment and may be reviewed on appeal whether or not the district court elects · to reexamine them after removal." *Reilly v. Waukesha County*, 993 F.2d 1284, 1287 (7th Cir.1993).

The *Reilly* Court correctly pointed out that prejudgment rulings of the state trial

judge need not be reviewed in detail by the federal district judge. *Id.* As the Supreme Court stated, in removal cases, the federal court "takes the case up where the State court left it off." *Duncan v. Gegan,* 101 U.S. (11 Otto) 810, 812, 25 L.Ed. 875 (1880). The transfer "did not vacate what had been done in the State court previous to the removal." *Id.* These comments, however, do not answer many of the problems that confront the district courts and Courts of Appeals in attempting to fit the square peg of the removal statute provision into the round hole of existing federal court procedures.

A complicating factor is that Resolution Trust may not have been substituted as a party until after the state or federal district court had entered a judgment. In such circumstances, Courts of Appeals have allowed Resolution Trust to raise new issues on appeal that it did not have an opportunity to raise in the earlier proceeding. *See Ward,* 972 F.2d at 199; *In re 604 Columbus Ave. Realty Trust,* 968 F.2d 1332, 1343 (1st Cir. 1992); *In re Meyerland Co.,* 960 F.2d at 519; *Baumann v. Savers Fed. Sav. & Loan Assoc.,* 934 F.2d 1506, 1512–13 (11th Cir.1991). A remand to the district court might be necessary for evidentiary hearings on some of those issues. It would be inefficient to hear such cases on appeal if prior consideration by the district court would eliminate the need to remand.

Moreover, some matters properly on appeal in the state courts would conceivably not be appealable in the federal system. For example, the United States Courts of Appeals lack jurisdiction over appeals from some interlocutory orders and orders for new trials that state appellate courts may have authority to review. Circumstances may also exist where the entry of Resolution Trust

into the case at the appellate level might induce the adverse party to forego an appeal to the United States Court of Appeals. By the same token, a district court should not be required to spend its limited resources on a case where the proceedings are complete and in condition for final appellate review, especially in cases like the one before us when purely state law is at issue.[3]

In the absence of applicable procedural rules, we must give some direction to the district courts to cope with the removal cases. As the Court of Appeals for the Fifth Circuit remarked, we must play the hand that Congress dealt us. *In re 5300 Memorial Investors,* 973 F.2d at 1162.

Although the customary rules-drafting process is more apt to produce a better product, we recognize the necessity of action to address cases presently being removed to federal courts, and thus adopt the following supervisory rules for the district courts within this Circuit.[4]

■ In all cases removed to the district court after judgment has been entered by a state court, the parties may, within thirty days of the date the case is docketed in the district court, file motions to alter, modify, or open the judgment.[5] After briefing or argument as it deems advisable, the district court should enter an order granting or denying such relief.

If the motion is denied or if the parties fail to file motions within the thirty-day period, the district court should enter an order adopting the state court judgment as its own. Parties then desiring to appeal shall observe the appropriate federal rules of procedure as applicable to a judgment of the district court. To the extent feasible and with necessary modifications, briefs prepared for the state

---

**3.** We note with some uneasiness that unlike the FDIC removal statute, 12 U.S.C. § 1819(b)(2)(D)(iii), which restricts federal court jurisdiction over actions involving purely state law questions, the Resolution Trust removal statute does not exclude such cases. The language of the statute thus allows Resolution Trust to remove routine collection and foreclosure cases to the already overburdened federal courts. This case apparently falls within that category because we have not been advised of any particular federal substantive interest in its adjudication. It

is a serious question whether such litigation is properly the role of the federal courts.

**4.** To the extent that they are consistent with the Resolution Trust removal statute, 12 U.S.C. § 1441a(*l*)(3), the procedures set out in the general removal statute, 28 U.S.C. § 1446, govern.

**5.** It would be helpful if the clerk of the district court would notify the parties of this supervisory rule promptly after docketing the removed case.

appellate court may be used in the Court of Appeals. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70*, 415 U.S. 423, 435–36, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435 (1974) ("Judicial economy is promoted by providing that proceedings had in state court shall have force and effect in federal court, so that pleadings filed in state court, for example, need not be duplicated in federal court.").

We emphasize that motions directed to the district court shall not require it to act as an appellate court. Rather, the motions that we envision are those in the nature of proceedings under Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or those seeking to reopen to allow Resolution Trust to present issues not previously raised in the state litigation.

We trust that these procedures will be of some assistance to the district courts and litigants in matters of this nature.

### IV.

Finally, Nernberg contends that because Resolution Trust did not notify the Superior Court until thirty-four days after the removal petition was filed in the district court, the case should be remanded. 28 U.S.C. § 1446(d) requires that a notice of removal be filed promptly with the state court. The requirement of notice to the state court is an important part of the removal process and has been held necessary to terminate the state court's jurisdiction. *See Stephens v. Portal Boat Co.*, 781 F.2d 481, 482 n. 1 (5th Cir.1986). Consequently, it is not an obligation that is to be treated as casually as Resolution Trust did in this instance. *See* 14A Charles A. Wright, et al., *Federal Practice and Procedure* §§ 3736–3737 (1985).

Nevertheless, Nernberg did not raise the issue in the district court and no question has been presented to us that would implicate the jurisdiction of the state or federal courts in the interim between the filing of the petition for removal and the notice to the Superior Court. *See Stephens*, 781 F.2d at 482. Accordingly, we conclude that Nernberg has not properly preserved the issue for appeal.

*See Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548 (5th Cir.1985).

The judgment of the district court will be reversed and the matter remanded for further proceedings consistent with this opinion.