

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-22-2005

# In Re: Willy Farah

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1017

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Willy Farah " (2005). *2005 Decisions.* Paper 1440.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1440

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1017

IN RE: WILLY FARAH,
Debtor

RAYMOND KEITH RICHARDS

v.

WILLY FARAH; PNC BANK, N.A.

Raymond K. Richards,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 02-cv-01662
District Judge:  The Honorable William J. Martini

Submitted Under Third Circuit LAR 34.1(a)
November 1, 2004

Before: ALITO, BARRY, and FUENTES, Circuit Judges

(Opinion Filed:  March 22, 2005)

OPINION

BARRY, Circuit Judge

Appellant Raymond Keith Richards appeals the decision of the District Court for the District of New Jersey, which dismissed Richards's appeal of a Bankruptcy Court order as untimely. Because of the unusual circumstances of this case, we will remand to the District Court with instructions to entertain Richards's appeal.

## I. Background

Richards was a client of an attorney named Ivo G. Caytas. Caytas introduced Richards to Willy Farah, a self-described international business investor and entrepreneur. Richards became an investor with Farah, investing ten million dollars in a joint bank account Farah opened at a Mid-Atlantic Bank in Clifton, New Jersey. By 1997, Mid-Atlantic Bank had become PNC Bank. In the summer of that same year, Richards learned that the funds he had deposited in the account he shared with Farah had been withdrawn. Richards brought suit in the Superior Court of New Jersey.

Richards's first complaint was in four counts against Farah alone. That complaint, filed on August 21, 1997, was based on Farah's allegedly fraudulent act of withdrawing the money from the joint account, and demanded twenty-six million dollars in damages.[1] Farah failed to defend, and a default judgment was entered against him on December 11, 1997.

---

[1] Ten million of these twenty-six million dollars appear to correspond with the amount Farah allegedly withdrew in violation of the investment agreement; it is unclear what the other sixteen million dollars in claimed damages is all about.

For some reason, five days later the Hon. Jack B. Kirsten, the Superior Court Judge to whom the case was assigned, allowed Richards to file an amended complaint adding a fifth count sounding in negligence and naming PNC as the defendant in that count.[2] The negligence claim alleged that PNC had allowed Farah to open the joint account in a way that did not comply with Richards's and Farah's investment agreement, or with customary banking practices. Richards sought damages in the amount of ten million dollars, the amount of money Richards had initially deposited in the bank and Farah had allegedly withdrawn.

On February 27, 1998, PNC moved for summary judgment. The Superior Court granted PNC's motion on both procedural and substantive grounds, dismissing Richards's complaint against PNC "with prejudice" on April 23, 1998 ("April '98 order").[3] Richards moved for reconsideration, but his motion was denied on July 7, 1998. He filed a timely notice of appeal with the New Jersey Appellate Division on August 2, 1998.[4]

Backtracking for a moment to May 5, 1998, three months before this appeal of the

---

[2]Under New Jersey Court Rule 4:43-2, a final judgment by default is a final resolution of a dispute between the parties involved.

[3] New Jersey Court Rule 4:37-2(d) provides that a dismissal "with prejudice" constitutes an adjudication on the merits, making it a final determination on the claims that are dismissed.

[4]On February 29, 2000, Richards filed another complaint against PNC based on information he obtained through discovery during Farah's bankruptcy proceedings. He claims, based on this new information, that PNC was negligent in its operation of the joint account. PNC's motion for summary judgment is pending before the Hon. William J. Martini.

April '98 order was taken, Farah filed a motion to vacate the default judgment entered against him. Surprisingly, Richards did not oppose Farah's motion. On September 29, 1998, the Superior Court opened the default judgment to give Farah the opportunity to try to prove a meritorious defense; however, Richards could still enforce the judgment, which had not been vacated. Richards began to levy against Farah's assets.

On November 19, 1998, Farah filed a Chapter 11 bankruptcy petition in the District of New Jersey and, pursuant to 28 U.S.C. § 1452, removed all remaining claims against him, including Richards's suit against PNC, to the District of New Jersey on that same day. The petition and all claims were referred to the Bankruptcy Court.

One day after removal, on November 20, 1998, the Appellate Division dismissed Richards's appeal of the April '98 order. The Court stated, without elaboration, that an appeal of that order would be interlocutory. From this point on, the action shifts entirely to the federal courts.

Adversary proceedings against Farah went forward in the Bankruptcy Court. On April 19, 2000, Richards filed a motion, under Fed. R. Civ. P. 54(b), seeking review of the April '98 order based on what he claimed was newly-discovered evidence. The Bankruptcy Judge, the Hon. Novalyn L. Winfield, denied that motion on June 19, 2001, a pivotal date in this case. Then, on July 16, 2001, Judge Winfield denied Farah's request for relief from the twenty-six million dollar default judgment entered against him in Superior Court in 1997.

4

On July 24, 2001, Richards filed a notice of appeal of the July 16, 2001 order in this Court, in the District of New Jersey, and in the Superior Court, all seeking review of the April '98 order on the ground that, under Fed. R. Civ. P. 54(b), it was "interlocutory and non-appealable until July 16, 2001." He subsequently moved to transfer the appeal before this Court to the District of New Jersey, and the motion was granted. Richards withdrew his appeal to the Superior Court.

The District Court Judge, the Hon. William J. Martini, first decided that there was no jurisdiction to review the April '98 order. Richards had argued, and continues to argue, that he was entitled to an appeal as of right because, when Farah removed these proceedings, the order granting summary judgment became "federalized", pointing to Tehan v. Disability Management Servs., Inc., 111 F. Supp. 2d 542 (D.N.J. 2000), as authority. Judge Martini held that Tehan was inapplicable and concluded that Judge Winfield correctly treated Richards's appeal of the April '98 order, at the Bankruptcy Court level, as a Fed. R. Civ. P. 54(b) motion. Then, when on June 19, 2001, she issued an order denying that motion, Richards could have appealed *that order* to the District Court.

Judge Martini reasoned that the only order Richards could properly appeal was one issued by Judge Winfield. In order to determine whether it was the June 19, 2001 or the July 16, 2001 order Richards had appealed, Judge Martini looked at the issues that Richards had briefed and determined that it was indeed the June 19, 2001 order, which

5

denied the 54(b) motion for review of the April '98 order, that had been appealed.

Having determined *what* was on appeal, Judge Martini turned to *when* Richards took that appeal and whether the appeal was timely. A notice of appeal must be filed within ten days of the order the party seeks to appeal. Fed. R. Bankr. P. 8002(a). Here, Judge Martini concluded, Richards did not file his appeal until July 24, 2001, more than one month after the June 19, 2001 order.

Richards's only response to this conclusion was to argue that the June 19, 2001 order did not become "final", and therefore appealable, until Judge Winfield's July 16, 2001 order and, thus, an appeal filed on July 24, 2001 was within the ten-day window. Judge Martini found, though, that the concept of "finality" is more fluid in the bankruptcy context than it is in the context of traditional civil litigation. Thus, because the June 19 order resolved a discrete dispute, he held that it was final and that Richards's July 24, 2001 appeal thereof to the District Court was untimely. On December 3, 2003, Judge Martini dismissed the appeal. Richards timely filed the appeal now before us.

## II. Jurisdiction and Standard of Review

This case was properly removed under the bankruptcy removal statute. 28 U.S.C. § 1452(a) ("[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."); see also Fed. R. Bankr. P. 9027. The District Court had jurisdiction under 28 U.S.C. § 1334(b)

6

because the Richards-PNC matter was sufficiently "related to" Farah's case under title 11. See In re Pacor, Inc., 743 F.2d 984 (3d Cir. 1984) (explaining that "related to" jurisdiction depends on "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."), rev'd on other grounds, Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995).[5]

The District Court also acted properly when it referred the case, after removal, to the Bankruptcy Court for the District of New Jersey. See 28 U.S.C. § 157(a). Thereafter, the District Court appropriately acted in an appellate capacity when it reviewed the "final judgments, orders, and decrees" of the Bankruptcy Court. See id. at § 158(a).

We have jurisdiction over the District Court's order under 28 U.S.C. § 158(d). We review any factual findings under a clearly erroneous standard, and exercise plenary review over legal issues. In re Montgomery Ward Holding Corp., 326 F.3d 383, 397 (3d Cir. 2003); see also Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981) ("We are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court's findings by the standards the

---

[5] In Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Supreme Court found the statutory provisions relating venue and removal in bankruptcy proceedings to be unconstitutional. Just after the Pacor controversy arose, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 in order to comply with the Marathon decision. That legislation gave the district courts the jurisdiction that bankruptcy courts had previously enjoyed, and resulted in a renumbering of the relevant statutory provisions; however, the substance of those sections was not altered. See Pacor, 458 U.S. at 987 n.4. Specifically, Pacor's § 1471 is today's § 1334; § 1478 is § 1452; and § 1293 is § 158.

7

district court should employ, to determine whether the district court erred in its review.").

### III.  Reviewability of Richards's Appeal

As explained above, the substance of Richards's appeal to the District Court was the April '98 order of the Superior Court that granted summary judgment in favor of PNC.  Properly presenting that issue in federal court was complicated by two concepts: federalization and finality.

*1.  Federalization of the April '98 Order*

Richards has continuously argued that the April '98 order was "federalized" as soon as Farah removed the case to federal court.  The federalization concept has been well-established in the non-bankruptcy removal context.  See, e.g., In re Diet Drugs Prods. Liab. Litig., 282 F.3d 220, 231-32 (3d Cir. 2002).  This "transformation" occurs by virtue of 28 U.S.C. § 1450.  See id. at 232 n.7 ("[w]henever a case is removed, interlocutory state court orders are transformed . . . into orders of the federal district court to which the action is removed.  The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered.") (internal citations omitted).[6]

---

[6]It is important to note that the federalization concept has no bearing on the *jurisdiction* of the state court vis-a-vis the federal court when a case is removed.  This point is relevant here because one day after Farah removed the case to the District of New Jersey, the Appellate Division denied Richards's appeal from the April '98 order, deeming it interlocutory.  This ruling is a nullity, as the state courts were immediately stripped of jurisdiction when Farah filed his notice of removal.  See In re Diet Drugs Prods. Liab. Litig., 282 F.3d at 231 n.6.

We have not decided whether section 1450 has the same transformative effect when removal is effected under section 1452, which deals solely with removal in bankruptcy cases. Nonetheless, the similarities between the general removal procedures of 28 U.S.C. §§ 1441-46 and the removal procedures in bankruptcy would indicate that the effect should be the same. Certainly, the Supreme Court has concluded that other non-bankruptcy removal procedures can "comfortably coexist" with the bankruptcy removal procedures. See Petrarca, 516 U.S. at 129. We decline to resolve the issue here, however, and include this discussion only to indicate that we understand the basis for Richards's argument.

*2. Finality*

Although Richards argued in the District Court that he was appealing the "federalized" April '98 order, he also argued that his appeal of the Bankruptcy Court's order of July 16, 2001 was timely and, therefore, properly before the District Court. We agree with the District Court, though, that Richards should have appealed the Bankruptcy Court's earlier order of June 19, 2001, which denied his motion to review the April '98 order. We base this conclusion on the fact that "[a] bankruptcy court order ending a separate adversary proceeding is appealable as a final order even though that order does not conclude the entire bankruptcy case." In re Professional Ins. Mgmt., 285 F.3d 268, 281 (3d Cir. 2002). Here, the June 19, 2001 order disposed of Richards's claim against PNC; the July 16, 2001 order dealt with Farah's request for relief from the default

9

judgment entered against him. Therefore, the clock for Richards's appeal as to his claim against PNC began running on June 19, 2001 and expired on June 29, 2001. See Fed. R. Bankr. P. 8002(a). Because Richards did not appeal until July 24, 2001, his appeal was untimely.[7]

Despite this, we recognize some confusion surrounding removal proceedings, especially in the bankruptcy context. Thus, as we have done before, and given the circumstances of this particular case, we will do some "field engineering" in light of the "lack of specificity in the statute about removal of appealed cases [that] poses substantial procedural problems" here for both parties. See Resolution Trust Corp. v. Nernberg, 3 F.3d 62, 67 (3d Cir. 1993). More specifically, because neither the Bankruptcy Court nor the District Court ruled on the finality of the various orders in this case, including the April '98 order, Richards could not necessarily have known when the "finality clock" began to tick. Therefore, guided by the underlying principles at work in Nernberg, we will deem his June 19, 2001 appeal timely and will remand to the District Court with instructions to consider the April '98 order on the merits.

IV. Conclusion

The December 3, 2003 order of the District Court will be reversed and this matter will be remanded for further proceedings consistent with this opinion.

---

[7]Of course, if Richards was appealing a "federalized" April '98 order *in se*, his appeal would also have been untimely.