16-2565
Maharjan v. Sessions

BIA
Cheng, IJ
A087 787 839

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of October, two thousand eighteen.

PRESENT: JOHN M. WALKER, JR.,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*,
WILLIAM H. PAULEY III,*
*District Judge.*

------------------------------------------------------------------

SABIN MAHARJAN,

*Petitioner*,

v.                                            No. 16-2565-ag

JEFFERSON B. SESSIONS III,
UNITED STATES ATTORNEY GENERAL,

---

\* Judge William H. Pauley III, of the United States District Court for the Southern District of New York, sitting by designation.

*Respondent.*

-------------------------------------------------------------------

FOR PETITIONER: KHAGENDRA GHARTI-CHHETRY, Chhetry & Associates, P.C., New York, NY.

FOR RESPONDENT: ROBERT D. TENNYSON, JR., Trial Attorney (Chad A. Readler, Acting Assistant Attorney General, Nancy E. Friedman, Senior Litigation Counsel, Sharon M. Clay, Trial Attorney, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition is GRANTED.

Petitioner Sabin Maharjan, a native and citizen of Nepal, seeks review of a June 29, 2016 decision of the BIA affirming a January 14, 2015 decision of an Immigration Judge ("IJ") denying Maharjan's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In re Sabin Maharjan, No. A 087 787 839 (B.I.A. June 29, 2016), aff'g

2

No. A 087 787 839 (Immig. Ct. N.Y. City Jan. 14, 2015). We assume the parties' familiarity with the underlying facts and procedural history of this case.

Under the circumstances of this case, we review both the IJ's and BIA's decisions "for the sake of completeness." Wangchuck v. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2006). We review an adverse credibility determination for substantial evidence. See 8 U.S.C. § 1252(b)(4)(B); Xiu Xia Lin v. Mukasey, 534 F.3d 162, 165–66 (2d Cir. 2008). The agency may, "[c]onsidering the totality of the circumstances," base an adverse credibility ruling on the following factors:

> [T]he consistency between the applicant's or witness's written and oral statements . . . , the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). "[A]n IJ may rely on any inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible." Xiu Xia Lin, 534 F.3d at 167.

Since the agency's decision in this case, we have clarified the standards pursuant to which the agency may rely on omissions. "[A]lthough IJs may rely

on non-material omissions and inconsistencies, not all omissions and inconsistencies will deserve the same weight." Hong Fei Gao v. Sessions, 891 F.3d 67, 77 (2d Cir. 2018). Instead, the agency must "distinguish between (1) omissions that arise merely because an applicant's oral testimony is more detailed than his or her written application, and (2) omissions that tend to show that an applicant has fabricated his or her claim." Id. at 82. Because the omissions in this case are very similar to those at issue in Hong Fei Gao, we remand for the agency to reconsider the adverse credibility determination. See id. at 79–81.

First, the agency relied on the omission from Maharjan's asylum application and his father's letter of a January 2008 phone call from Maharjan's attackers. Maharjan's application and his father's letter reported that Maoists shot at Maharjan in January 2008. The application and letter also stated that the Maoists called Maharjan's family after the shooting to inquire about him and to get information about him. However, neither the application nor the letter specified that the Maoists called Maharjan's father within days of the shooting and claimed responsibility for it. On cross-examination, when Maharjan was asked how he knew that the people who shot at him were Maoists, Maharjan

4

responded that the Maoists called his father on January 9, 2008 (three days after the shooting), claimed responsibility for the shooting, and stated that the shooting was a warning to Maharjan. Maharjan gave two explanations for the omission: that neither he nor his father thought it was necessary to include the call, and that he did not know anyone other than the Maoists who would shoot at him. On the one hand, the January 2008 call is significant because it directly links the shooting to the Maoists, and Maharjan's description of other calls from the Maoists undermines his explanation that he did not know this type of information was important. But Hong Fei Gao clarified that this type of omission is not so probative of credibility: "[W]here the belatedly recollected facts merely augment that which was originally described, the prior silence is often simply too ambiguous to have any probative force . . . ." 891 F.3d at 78 (quotation marks omitted). An omission that surfaces during cross-examination or IJ questioning is even less probative because "[i]t [i]s not as though [petitioners] volunteered the information on direct examination in an effort to falsely buttress their claims through testimony." Id. at 80. And a third party's omissions (like those in Maharjan's father's letter) should not be held against the

applicant unless the omissions create an inconsistency with the applicant's own statements. Id. at 81.

Second, Maharjan's application also reported "minor injuries and bruises" that were treated at a medical facility after a November 2008 beating by the Maoists. Certified Administrative Record ("CAR") at 601. He submitted a hospital record stating that the treatment was for "injuries in the head" and "minor injuries and bruises." Id. at 583. But Maharjan expanded on those statements at the hearing. He testified that he was hospitalized for one night after he was attacked with a knife, that he had a cut on his arm and was "black and blue all over [his] body," and that he was beaten in the head with sticks and bleeding badly. Id. at 132; see id. at 132–35. Finding a lack of consistency between Maharjan's testimonial descriptions and the other statements, the IJ concluded that his testimony appeared to exaggerate the severity of the injuries and medical treatment. But Maharjan's testimony could also be viewed as simply more detailed than the application and letter. Assuming that the knife cut on Maharjan's arm was a relatively minor injury, his description does not actually contradict the hospital record. Id. at 583.

Third, the IJ also relied on Maharjan's omission of the fact that his father reopened his small textile factory (which he had closed in April 2008 after Maoists threatened to blow it up) in February or March 2009, about a month after Maharjan came to the United States. On cross-examination, Maharjan explained that he did not include this information in the asylum application because, at the time he filed his application, his father had only a few employees, he was not sure exactly when the factory reopened because he was in the United States, and he did not think this information was important enough to mention. Maharjan added that he still feared the Maoists despite this development because:

> [T]he Maoists were personally against me because of my continuation of the work with the Nepali Congress Party and my opposition to the Maoists['] activities. The[y] were not really, you know, against my father or my father's factory. So when I was out of the scene . . . my father, you know, slowly started reopening the factory.

Id. at 145. Particularly in light of Maharjan's explanation that the factory's reopening did not diminish his fear of the Maoists, this omission does not provide significant support for an adverse credibility finding. See Hong Fei Gao, 891 F.3d at 80 (noting that "asylum applicants [are not] required to list every incident that occurs in the aftermath of the alleged persecution").

7

Finally, Maharjan testified that he dropped out of his university in the United States because of "mental shock," but his application stated that he stopped attending because he could not afford the tuition after his father's factory closed. CAR at 163. Maharjan explained that both were contributing factors. This inconsistency is too tangential to Maharjan's asylum claim to support an adverse credibility ruling on its own. See Hong Fei Gao, 891 F.3d at 77–78.

Considering the record as a whole, the agency placed too much weight on the above omissions. See id. at 79. Apart from the omissions, Maharjan provided a detailed written statement and testimony consistent with his application regarding the events in 2007 and 2008 that caused him to leave Nepal. He corroborated his claim with letters from his father and his party, party membership documents, threat letters from the Maoists, a hospital record, and a small business certificate confirming his father's ownership of the factory. Accordingly, we grant the petition and remand the case for the agency to reconsider its adverse credibility ruling under the clarified standard set forth in Hong Fei Gao. Id. at 77.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court