NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0386n.06
Filed:  May 11, 2005

No. 04-5200

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHAZ CONSTRUCTION, LLC; GRANT )
TRUCKING CO., on behalf of themselves and a )
class of persons similarly situated, )
 )
 ) ON APPEAL FROM THE
  *Plaintiffs-Appellants*, ) UNITED STATES DISTRICT
 ) COURT FOR THE EASTERN
v. ) DISTRICT OF KENTUCKY
 )
JAMES C. CODELL, III, in his personal capacity; ) **O P I N I O N**
J.M. YOWELL, in his personal capacity; )
COMMONWEALTH OF KENTUCKY )
TRANSPORTATION CABINET, )
 )
  *Defendants-Appellees*. )

BEFORE:  COLE and GILMAN, Circuit Judges; POLSTER, District Judge[*]

  **R. GUY COLE, JR.**, Circuit Judge.  Chaz Construction, LLC, Grant Trucking Company,

and the class of persons similarly situated (hereinafter "plaintiffs"), appeal (1) the dismissal of their

civil cause of action under the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18

U.S.C. § 1961, et seq., (2) the district court's refusal to allow them to amend their complaint, (3) the

dismissal of their action under 42 U.S.C. § 1983, and (4) the dismissal of all claims against the

Transportation Cabinet and the individual defendants in their official capacities pursuant to

---

  [*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

sovereign immunity. For the following reasons, we **REVERSE** the district court's denial of the plaintiffs' motion to amend their complaint and the court's dismissal of the RICO claims, **AFFIRM** the court's grant of summary judgment to the defendants under § 1983, and **AFFIRM** the dismissal of the complaint against the Transportation Cabinet, and Codell and Yowell in their official capacities, based on sovereign immunity.

## I. BACKGROUND

The plaintiffs, Chaz Construction, LLC, Grant Trucking Company, and the class of persons similarly situated, are a group of disadvantaged business enterprises. The defendants are: the Commonwealth of Kentucky Transportation Cabinet ("Cabinet"); James C. Codell, III, individually and in his official capacity as the Cabinet Secretary; and J.M. Yowell, individually and in his official capacity as Kentucky State Highway Engineer (hereinafter "defendants"). The plaintiffs brought this action in state court, alleging that the defendants deprived them of property through fraudulent administration of the Disadvantaged Business Enterprise Program ("DBE program"). The complaint alleged that the defendants knowingly granted certification to other businesses which did not qualify for DBE certification, thereby injuring the defendants. The plaintiffs asserted a cause of action for mail fraud under RICO and a cause of action for violation of due process under § 1983.

The state court held that the Cabinet, as well as Codell and Yowell in their official capacities, were protected by state sovereign immunity and consequently dismissed the complaints against them. The remaining defendants, Codell and Yowell in their individual capacities, then removed the claims to federal district court pursuant to 28 U.S.C. § 1446.

In the district court, the plaintiffs moved to amend their complaint and the defendants moved

to dismiss it. In their proposed amended complaint, the plaintiffs alleged that the defendants injured the plaintiffs by representing that they fairly and legally administered the DBE program. The plaintiffs alleged that they relied on these statements and consequently expended time and money to obtain DBE certification, to maintain their businesses as DBEs, and to apply for contracts under the DBE program. The district court denied the plaintiffs' motion to amend and granted the defendants' motion to dismiss the claims under RICO and § 1983. The plaintiffs appealed.

## II. ANALYSIS

### A. The District Court Did Not Err in Requiring the Plaintiffs to Plead Reliance.

The district court dismissed the plaintiffs' civil RICO claims based on their failure to plead reliance. We review a district court's grant of a motion to dismiss *de novo*. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 885 (6th Cir. 1990).

The court determined that the plaintiffs must plead reliance to state a claim under RICO based on its interpretation of the predicate-act requirements for RICO claims in *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993). On appeal, the plaintiffs argue that reliance is not a predicate-act requirement under RICO pursuant to the Supreme Court's opinion in *Neder v. United States*, 527 U.S. 1 (1999), and this Court's opinion in *United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003), and that the district court's decision must therefore be reversed.

The district court misinterpreted the holding in *Central Distributors* as stating that reliance is a predicate-act requirement that must be pleaded in order to state a claim under RICO. Rather, *Central Distributors* held that a showing of reliance is required to establish standing in civil RICO cases, a holding that is not in conflict with the Supreme Court's decision in *Neder* or this Court's

decision in *Daniel*.

In *Neder*, the Supreme Court stated that "[t]he common-law requirements of 'justifiable reliance' and 'damages,' . . . plainly have no place in the federal fraud statutes." 527 U.S. at 24-25. This Court, recognizing the Supreme Court's holding in *Neder*, has stated that "reliance is not an element of mail or wire fraud." *Daniel*, 329 F.3d at 486 (quoting *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir. 1994)). The plaintiffs argue that these holdings are in direct conflict with the district court's interpretation of the requirement in *Central Distributors* that the plaintiff plead reliance in order to state a claim for mail fraud under RICO, and that consequently, reliance on the rule in *Central Distributors* was misplaced as it was implicitly overruled by intervening Supreme Court precedent and this Court's interpretation of that Supreme Court precedent in *Daniel*.

However, the cases are not in conflict. The holdings in *Neder* and *Daniel* relate to the requirement that the government show reliance in a criminal prosecution for mail fraud, *Neder*, 527 U.S. at 24, 25; *Daniel*, 329 F.3d at 486, whereas the holding in *Central Distributors* relates to the requirement that a civil plaintiff show reliance on the fraudulent acts in order to establish standing in a civil RICO case. *Central Distribs.*, 5 F.3d at 183-84. Standing is not required in criminal prosecutions. Therefore, the holding in *Central Distributors* that plaintiffs must plead reliance in order to establish standing in a civil RICO case does not conflict with the holdings in *Neder* and *Daniel* that the government need not prove reliance in criminal mail fraud prosecutions.

As a result, although the district court misinterpreted the rule in *Central Distributors*, its determination that the plaintiff show reliance in a civil RICO action in order to survive a motion to dismiss was not in error.

**B. The District Court Erred in Refusing to Grant Plaintiffs' Motion to Amend.**

The district court denied the plaintiffs' motion to amend their complaint based on futility. J.A. 510, n.1 ("[I]n keeping with the reasoning articulated in this memorandum opinion and order, the Court agrees that it would be futile."). Futility is an appropriate basis for denying a motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, motions to amend are to be freely granted "when justice so requires." Fed. R. Civ. P. 15(a).

While we generally review the denial of a motion to amend for abuse of discretion, *see Dubuc v. Green Oak Township*, 312 F.3d 736, 743 (6th Cir. 2002), we review such a denial *de novo* where, as here, the judge's denial was based on his conclusion that plaintiffs' amendments would have been futile. *Id.* Where the underlying facts would provide sufficient basis for a cause of action, absent an alternative reason such as undue delay or bad faith, the district court should grant a motion to amend to plead these underlying facts. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Since the district court did not articulate any other grounds for denial, the question before us is whether the district judge correctly decided that the proposed amendments would have been futile.

The amendments to the complaint state that through letters, speeches, and private meetings with the plaintiffs, the defendants represented the following:

> a. That the DBE Program was administered fairly and in compliance with federal and state regulations;
> b. That a business wishing to be certified must comply with the requirements of the DBE Program, as set out in federal and state regulations;
> c. That DBE participation targets were set fairly and in compliance with the process set out in federal and state regulations[;]
> d. That only work actually performed by properly certified DBE's would be counted

> toward the DBE participation targets;
> e. That if the plaintiffs caused their companies to become certified in accordance with the rules of the DBE Program, they would be given an honest chance to compete for contracts administered by the Transportation Cabinet.

J.A. 430.

> In addition, the plaintiffs alleged that they:

> relied on these statements to their detriment by expending time, money and effort to cause their business to become certified as DBE's and renew the certifications annually; by obtaining equipment, labor and financing to operate their companies as DBE's; and by bidding on projects which had target percentages set for DBE's.

J.A. 431.

Assuming, as we must, that the facts pleaded are true, the amended complaint alleges that the plaintiffs relied on letters from the defendants which represented the requirements and administration of the DBE program. In reliance on those representations, the plaintiffs expended time and money to obtain DBE certification and to maintain their company in compliance with DBE regulations. In addition, they spent time and money bidding on projects for which there was a requirement that a certain number of contractors be DBEs. The alleged fraudulent statements made by the defendants caused the plaintiffs to alter their activity to their detriment. Consequently, the amended pleadings demonstrate reliance on the alleged fraud.

The next question is whether a showing of reliance would have been sufficient to overcome a motion to dismiss. The defendants argue that the pleadings would have been futile for a number of alternative reasons. First, the defendants argue that to survive a motion to dismiss, the plaintiffs would have needed to plead "that [their] bids [were] the lowest and/or would have been accepted by the Cabinet absent the alleged RICO violation." Yowell Br. at 19; *see also* Codell Br. at 11. In

other words, the defendants argue that the plaintiffs did not sufficiently allege that they were injured

by the alleged fraud. However, the plaintiffs alleged they were injured by participating in the

bidding process itself. This injury arises regardless of whether they would have actually received

the contracts in question and is sufficient for standing.

Second, the defendants argue that many of the statements were not made by mail, as required

by RICO. However, in mail fraud cases, fraudulent statements not contained in the mail, but

connected to the scheme, are appropriately considered by the court as part of the overall scheme.

*See United States v. Montgomery*, 980 F.2d 388, 393 (6th Cir. 1992). In fact, the use of the mail

need not even be an "essential element of the scheme," it can be "incident to an essential element"

or a step in the plot. *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 710-711 (1989)). As a

result, the fact that only some of the claims were made in the mail does not render the cause of

action defective.

Third, the defendants argue that their statements were "representations [or

misrepresentations] of law" which are not actionable under Kentucky law. Yowell Br. at 18.

However, the RICO claim was brought pursuant to federal law, not Kentucky law, so Kentucky law

barring actions based on misrepresentations of law is irrelevant. Further, this case does not present

a cause of action based on a misrepresentation of law. The defendants made a representation of law,

but there is no allegation that this representation was inaccurate. The fraud alleged in this case

instead arises from the fact that the defendants indicated that they conducted business in accordance

with the accurately represented law, not from a misrepresentation of what the law is. As a result,

Kentucky's rule barring actions based on misrepresentations of law would not bar this cause of

action, even if applicable.

Finally, the defendants argue that "these statements cannot be construed to have been 'material,' and Plaintiffs' claims of reliance thereon are equally dubious." Yowell Br. at 18. This argument, however, amounts to an argument that this Court disbelieve the plaintiffs' allegations that they relied on the defendants' representations of the DBE program and its administration. However, any doubt regarding whether the plaintiffs relied on these statements must be construed in favor of the plaintiffs. As a result, this argument fails.

Since the district court based its denial of plaintiffs' motion to amend on futility, and since the amendments would not have been futile, this denial was in error. Therefore, we remand the case to the district court to permit the plaintiffs to amend their complaint.

**C. The District Court Did Not Err in Dismissing Plaintiffs' Section 1983 Claim.**

The district court dismissed the plaintiffs' § 1983 claims for violation of due process based on failure to establish facts sufficient to constitute a due process violation. We review the district court's grant of a motion to dismiss *de novo*. *Dana*, 900 F.2d at 885.

The district court assumed without deciding that the plaintiffs had a protectible life, liberty, or property interest. The court then concluded that the state remedy under 600 KAR 4:010 was adequate to remedy any perceived due process violation and that the plaintiffs therefore could not state a claim for a due process violation under the rule established in *Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled on other grounds by *Daniels v. Williams*, 575 U.S. 327, 330-31 (1986)).

This decision was proper. A plaintiff is not required to exhaust state remedies before pursuing a § 1983 claim. *Monroe v. Pape*, 365 U.S. 167, 183 (1961). However, in a procedural due

process case where a government official deprives a plaintiff of property by way of an unauthorized official act rather than pursuant to established procedures, the plaintiff has no due process claim if the state provides an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. at 544; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982) (holding *Parratt* does not apply where an officer acts pursuant to established procedures); *Victory v. Walton*, 721 F.2d 1062 (6th Cir. 1983) (holding *Parratt* only applies to procedural due process claims). The rule applies to both negligent and intentional deprivations. *Hudson v. Palmer*, 468 U.S. 517 (1984).

Both parties agree that the alleged misconduct was unauthorized official action. The next question, therefore, is whether the state post-deprivation remedies were adequate. Kentucky law provides third parties the right to challenge the DBE certification of any company the third-party believes is ineligible. 600 KAR 4:010 § 10. In addition, Kentucky law provides parties "adversely affected by a decision of the Cabinet" the right to appeal the Cabinet's decision. 600 KAR 4:010 § 11. This appeal guarantees a hearing within thirty days. 600 KAR 4:010 § 11(2)(a). A dissatisfied party may appeal the Cabinet's decision to the United States Department of Transportation. 600 KAR 4:010 §§ 10(10), 11(5); *see also* 49 C.F.R. 26.89.

These remedies specifically address the deprivations alleged in this case: (1) certification of ineligible DBEs, and (2) denial of contracts to properly certified DBEs, something appropriately characterized as a decision by the Cabinet that "adversely affected" the plaintiffs. Although Kentucky law does not provide money damages, this is not fatal. In *Parratt*, the Court held that the state remedy was adequate despite the fact that it did not provide for punitive damages or a jury trial, as would be provided under § 1983. *Parratt*, 451 U.S. at 544.

Furthermore, the case relied on by plaintiffs to establish that the absence of money damages may render post-deprivation proceedings insufficient is distinguishable. In *Covington v. Knox County Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000), the plaintiff brought a claim under the Individuals with Disabilities Education Act, a statute which explicitly requires administrative exhaustion unless the administrative remedies would be futile or inadequate to protect plaintiffs' rights. *Id.* at 917. This Court recognized that "a mere claim for money damages is not sufficient to render exhaustion of remedies unnecessary," but stated that the unique circumstances of the case, namely that injunctive or other equitable relief would not alleviate the injuries, rendered the state administrative processes futile. *Id.* The case is unpersuasive for two reasons. First, our case is not one where exhaustion of administrative remedies is required by statute. As stated *supra*, exhaustion of administrative remedies is not required before a plaintiff may pursue a cause of action under § 1983. Rather, where a plaintiff has an adequate state or administrative remedy, there exists no procedural due process violation if the deprivation occurred pursuant to a random and unauthorized act.

Second, *Covington* recognized that ordinarily the addition of a claim for money damages is insufficient to render administrative processes inadequate. The case created an exception for the unique circumstances where money damages are the only remedy for the harm. While plaintiffs argue that money damages are the only remedy for their injuries, this argument is unpersuasive. If the plaintiffs pursued the available administrative remedies, assuming their claims were meritorious, they would have received due process (assuming, of course, that the administrative remedies themselves did not violate procedural due process in some manner). This procedure would provide a remedy to the plaintiffs – fair administration of the DBE application and selection process – and

thus distinguishes the case from *Covington*.

Since the alleged procedural due process violation was pursuant to an unauthorized official act and since the state procedures provided an adequate post-deprivation remedy, the district court appropriately dismissed the plaintiffs' § 1983 claim pursuant to *Parratt v. Taylor* because there was no procedural due process violation.

**D. The Court Did Not Err In Dismissing the Claims Against the Cabinet and the Individuals in Their Official Capacities Based on Sovereign Immunity.**

*1. This Court has jurisdiction to consider the state court's dismissal of the claims against the Cabinet and the two individuals in their official capacities.*

In reviewing plaintiffs' appeal of the state court's dismissal of this action against the Cabinet and the individual defendants in their official capacities, this Court must first determine that it has jurisdiction to consider the appeal. In this case, the state court dismissed the Cabinet and the two individual defendants in their official capacities on sovereign immunity grounds. The state court did not dismiss the case against the individual defendants in their individual capacities. After the state court's dismissal, the two remaining defendants removed the case to the federal district court. The federal district court dismissed the claims against the remaining two defendants. The plaintiffs then appealed all of the dismissals. Therefore, the following discussion about sovereign immunity only applies to the state court's dismissal of three defendants: the Cabinet, and Yowell and Codell in their official capacities.

Ordinarily, a federal appellate court does not have jurisdiction to review a decision of a state court. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). However, in cases involving removal, the district court is instructed to "take[]

up the case where the State court left it off." *Duncan v. Gegan*, 101 U.S. 810, 812 (1880). Further, although "[a]ny orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal . . . it is well-settled that they do remain binding on the parties until formally set aside by the district court." 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3738 (3d ed. 1998); *see also* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 435-38 (1974).

Several other circuits have discussed and decided that a state court's orders prior to removal are reviewable by the federal appellate court even when the district court did not actually rule on the claim. *See Maez v. Mountain States Telephone & Telegraph, Inc.*, 54 F.3d 1488, 1495 (10th Cir. 1995); *Resolution Trust Corp. v. Nernberg*, 3 F.3d 62, 67-68 (3d Cir. 1993); *Reilly v. Waukesha County.*, 993 F.2d 1284, 1287 (7th Cir. 1993); *but see Jackson v. Am. Savings Mortgage Corp.*, 924 F.2d 195 (11th Cir. 1991) (holding the order is only reviewable if actually considered by the district court). We apply the same rule here and review the decision of the state court prior to removal as the decision of the district court that inherited the entire case upon removal.

*2. The state court did not err in granting the motion to dismiss based on sovereign immunity.*

The state court dismissed all claims against the Cabinet and the two state officials in their official capacities on the basis of sovereign immunity. This was not error. Cabinet members and state officials are considered arms of the state, generally protected by sovereign immunity. *Florida Dep't. of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n.*, 450 U.S. 147 (1981)

(holding agencies of state government are part of the state for purposes of sovereign immunity); *Ford Motor Co. v. Dep't of the Treasury*, 323 U.S. 459, 464 (1945) (holding suits against state officials for monetary damages impermissible where the "action is in essence one for the recovery of money from the state" rather than against the officer in his individual capacity); *Ex parte Young,* 209 U.S. 123 (1908) (holding suits against state officials for prospective injunctive relief are permissible because they are, in effect, suits against the officials in their individual capacities).

While these officials are generally protected by sovereign immunity, there are some exceptions to this protection. First, Congress may abrogate sovereign immunity where Congress's authority to act arises under § 5 of the Fourteenth Amendment, but it must make its intent to abrogate immunity explicit and clear. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). RICO does not arise under § 5 of the Fourteenth Amendment, and although § 1983 was adopted pursuant to § 5 of the Fourteenth Amendment, Congress did not indicate its intent to abrogate state sovereign immunity and therefore the Court has read the statute as preserving immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). As a result, neither cause of action in this case is based on law wherein Congress abrogated state sovereign immunity.

Second, a state may waive its sovereign immunity. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Waiver of sovereign immunity is only found where expressly stated or "by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673 (citation omitted). A state's consent to suit in its own court does not constitute a waiver of Eleventh Amendment immunity. *Florida Dep't. of Health &*

*Rehabilitative Servs. v. Florida Nursing Home Ass'n.*, 450 U.S. 147, 149-50 (1981). In addition, a general waiver of immunity is not sufficient to constitute waiver of Eleventh Amendment immunity. *Atascadero*, 473 U.S. at 241. A state must specify its intention to be subject to suit brought in federal court, not just to suit brought in state court. *Id.*

In this case, there is no indication that Kentucky intended to subject itself to suit in federal court. The Kentucky Constitution states that "The General Assembly may, by law, direct in what manner and in which courts suits may be brought against the Commonwealth." Ky. Const. § 231. Kentucky courts have interpreted this provision to protect sovereign immunity broadly. *See Bd. of Trs. of the Univ. of Kentucky v. Hayse*, 782 S.W.2d 609, 616 (Ky. 1990) (overruled on other grounds by *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2002)) (noting § 231 "does not differentiate between suits for money damages and suits for injunctive relief").

The Kentucky Supreme Court has held that "the state cannot be sued except upon a specific and explicit waiver of sovereign immunity." *Commonwealth v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002). The plaintiffs do not cite any Kentucky statutes which authorize waiver of sovereign immunity in cases such as this. Instead, the plaintiffs attempt to use three cases to show that Kentucky has waived its immunity for suits for injunctive relief. However, none of the cases hold that Kentucky waived its sovereign immunity for cases involving injunctive relief. Instead, these cases apply the rule set out in *Ex parte Young,* 209 U.S. 123 (1908): that individuals can sue state officials for injunctive relief for actions taken as part of their official duties. The theory behind this rule is that the state official is not acting as the state when he violates the Constitution or federal statutes. Therefore, the suit against the official is in his "individual" capacity, not in his "official"

capacity, and is not barred by sovereign immunity.

In *Hayse,* the Kentucky Supreme Court recognized that Kentucky's constitution could not "be used as a bar to litigants seeking prospective injunctive relief for violations of federally protected rights against state officials." 782 S.W.2d at 616 (internal citations omitted) (quoting *Ex parte Young*, 209 U.S. 123 (1908)). In other words, the Kentucky Supreme Court recognized that suits against officials for prospective injunctive relief are not barred by sovereign immunity and consequently could not be barred by Kentucky's broad definition of sovereign immunity. Similarly, in *Clevinger*, the Kentucky Supreme Court upheld the award of "prospective relief" for violations of federal law and affirmed the trial court's dismissal of the claims for damages and violations of state constitutional rights based on sovereign immunity. *Clevinger v. Bd. of Educ.*, 789 S.W.2d 5, 9 (Ky. 1990). This ruling thus comports with the rule in *Hayse* and in *Ex parte Young* that actions for damages and state constitutional violations are barred by sovereign immunity absent abrogation or waiver, but that actions for prospective injunctive relief for violations of federal law are not barred by sovereign immunity. Finally, in the third case cited by the plaintiffs, *Cottongim v. Stewart*, 142 S.W.2d 171 (Ky. Ct. App. 1940), the Court of Appeals of Kentucky permitted damages against state officials in their individual capacities, but barred actions for damages against the officials in their official capacities. *Cottongim* distinguished action taken by a state official in his official capacity from action taken by state official in his individual capacity, a distinction similarly made in this case. It does not hold that Kentucky waived its sovereign immunity.

The plaintiffs are correct that sovereign immunity does not bar their claims insofar as their claims are for prospective injunctive relief against state officials. *See Ex parte Young*, 209 U.S. at

123.  However, this argument is consistent with the court's actions in this case.  The court did not

dismiss the claims against state officials Codell and Yowell in their individual capacities.  As a

result, the claims for injunctive relief against Codell and Yowell were still before the district court.

We assume, for purposes of *Ex parte Young* that an individual is not acting in his official capacity

when carrying out violations of law.  As a result, actions taken as a part of his official duties are

appropriately considered in an "individual capacity" suit.  Therefore, the plaintiffs' claims for

injunctive relief against Codell and Yowell in those parties' individual capacities were appropriately

before the court.

In addition, the court did not err in dismissing the claims against the Cabinet.  The

Transportation Cabinet is a governmental body, not a state official, and therefore is not subject to

the exception created by *Ex parte Young*.  As a result, the court appropriately dismissed the claims

against the state officials in their official capacities and the Cabinet, while maintaining the claims

against the state officials in their individual capacities.

The plaintiffs also argue that Kentucky law does not bar claims against the state where those

claims are for damages for criminal conduct.  This argument is problematic for two reasons.  First,

this is not a criminal case.  Second, the plaintiffs' arguments about "illegal" or "fraudulent" conduct

rely on cases from other jurisdictions.  However, while other states may have consented to suits

based on illegal or fraudulent conduct, the question before this Court is whether Kentucky waived

its sovereign immunity to suits alleging illegal or fraudulent conduct, a question not affected by

waivers in other states.  The only Kentucky case cited by the plaintiffs recognizes that sovereign

immunity protects the state from liability for intentional torts, but then holds that a municipal entity

is not entitled to sovereign immunity. *Calvert Invs., Inc. v. Louisville & Jefferson County Metro. Sewer Dist.*, 805 S.W.2d 133, 139 (Ky. 1991). This case is inapplicable insofar as it holds that sovereign immunity does not apply to municipal parties. In addition, the case reaffirms the defendants' claim that courts may not interpret Kentucky law to permit a suit against the state for an intentional tort where it is not explicitly permitted by law.

### III.  CONCLUSION

For the reasons stated above, we **REVERSE** the district court's denial of the plaintiffs' motion to amend their complaint and the court's dismissal of the RICO claims, **AFFIRM** the court's grant of summary judgment to the defendants under § 1983, and **AFFIRM** the dismissal of the case against the Cabinet, and Codell and Yowell in their official capacities, based on sovereign immunity.