**Claude WILDER & Charles Holbrook, Plaintiffs,**

v.

**Danl L. HALL, et. al., Defendants.**

**Civil No. 06–079–GFVT.**

United States District Court,
E.D. Kentucky,
Southern Division,

March 30, 2007.

garded"); *Dunlop,* 527 F.2d at 401 (recognizing *de minimis* exception).

William Lewis Collins, Whitesburg, KY, Ned Pillersdorf, Pillersdorf, Derossett & Lane, Prestonsburg, KY, for Plaintiffs.

Bryan Howard Beauman, Stephen Lewis Barker, Sturgill, Turner, Barker & Moloney PLLC, Lexington, KY, for Defendants.

## MEMORANDUM OPINION AND ORDER

VAN TATENHOVE, District Judge.

Before the Court are two Motions to Dismiss filed by two of the three named Defendants, State Representative Howard Cornett ("Cornett") [R. 9] and the Kentucky Transportation Cabinet ("the Cabinet"). [R. 11]. Cornett argues that the claims against him must be dismissed because his actions are constitutionally protected [R. 9]. The Cabinet argues that it is immune to suit under the doctrine of sovereign immunity. [R. 11]. The Court agrees and will grant both motions.

## I.

In the Spring of 2005, William Smallwood ("Smallwood") was promoted to the position of Superintendent II in the Cabinet. [R. 1].[1] While Wilder and Holbrook

---

1. As discussed in section II, *infra,* the Court must take all allegations of the Complaint as true.

are registered Democrats, Smallwood is a registered Republican. [*Id.* at 2]. Allegedly, Cornett, a Republican member of the Kentucky House of Representatives from Letcher County, Kentucky,[2] persuaded Hall to promote Smallwood since he was the only registered Republican working locally for the Cabinet. [*Id.*]. This recommendation was in direct conflict with a recommendation made to Cornett by Letcher County Judge Executive Carroll Smith ("Judge Executive Smith"), also a Republican. [*Id.* at 4.]. Judge Executive Smith allegedly recommended that Wilder, his brother-in-law, receive the promotion based on his experience with the Cabinet. [*Id.*]. Judge Executive Smith and Cornett were also in a dispute over legislation pending in the Kentucky Legislature. [*Id.*]. Wilder and Holbrook allege that Cornett's recommendation diverged from Judge Executive Smith because of this dispute. [*Id.*]

Ultimately, after Cornett's recommendation, Smallwood was promoted, [*Id.* at 3], even though Wilder and Holbrook claim that they had more experience. [*Id.* at 2]. Wilder had twenty-seven years experience; Holbrook had sixteen years of experience; and Smallwood had six years of experience. [*Id.*]. Further, they contend that Smallwood did not even participate in the Superintendent II interviews, and, thus, Hall's contention that he hired Smallwood based on those interviews is false. [*Id.*].

Specifically, Wilder and Holbrook claim that Hall "awarded the [Superintendent II] position to William Smallwood based on improper political considerations," which were motivated "by the political influence exerted on him by the Defendant Howard Cornett." [*Id.*]. This influence was in the form of Cornett's recommendation of Smallwood and was in order "to promote an unconstitutional political agenda" and was accomplished through an alleged conspiracy by Cornett, Hall, and other unknown Cabinet employees in which all parties supplanted objective hiring criteria for impermissible political considerations, including political party identification and the dispute with Judge Executive Smith. [*Id.* at 3–4]. These actions, *in toto*, are alleged to have led to the violations of Holbrook and Wilder's rights under 42 U.S.C. § 1983, specifically their freedom of speech, freedom of association, and due process rights. [*Id.*].

**II.**

When examining a motion to dismiss under Federal Rule of Civil Procedure 12(b), "this Court accepts as true all well-pleaded factual allegations and views the complaint in the light most favorable to the plaintiff." *McCormick v. Braverman*, 451 F.3d 382, 398–99 (6th Cir.2006). This Court must " 'take the plaintiff's factual allegations as true' and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief, then . . . dismissal is proper." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997) (quoting *Forest v. U.S. Postal Serv.*, 97 F.3d 137, 139 (6th Cir.1996)).[3] "[A] plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Uttilla v.*

---

**2.** The Court notes that while Cornett was a member of the Kentucky House of Representatives at the time this action accrued, he is no longer a member of that body and has been sued in his individual capacity.

**3.** If this Court relies on matters outside the pleadings, then it is required to construe the motion as a motion for summary judgement. Fed. R. Civ. Pro. 12(b); *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir.1997). The Court will not go beyond the pleadings for this Order.

*City of Memphis,* 40 F.Supp.2d 968, 970 (W.D.Tenn.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). "Under the liberal notice pleading rules, a complaint need only put a party on notice of the claim being asserted against it to satisfy the federal rule requirement of stating a claim upon which relief can be granted." *Am. Postal Workers Union v. City of Memphis,* 361 F.3d 898, 902 (6th Cir.2004). Generally, there is no heightened pleading requirement for claims made under 42 U.S.C. § 1983. *Id.*

## A.

■ The Cabinet argues that the statute of limitations ran prior to the filing of the Complaint [R. 11], and Cornett has adopted this argument. [R. 13]. In a section 1983 action, a federal court will borrow the personal torts limitations period from the state in which the claim arose. *See Merriweather v. City of Memphis,* 107 F.3d 396, 398 & n. 1 (6th Cir.1997). When computing a limitations period, however, Federal Rule of Civil Procedure 6(a) controls. *Id.* "A statute of limitations that would run on a Saturday or Sunday would not bar a complaint filed the following Monday...." *Id.* at 398 n. 2. It is undisputed that the limitations period expired on either April 15, 2006, a Saturday, or April 16, a Sunday. [*See* R. 11, p. 6]. The Complaint was filed the following Monday, April 17. This action was timely filed.

## B.

Wilder and Holbrook have asserted a section 1983 claim against Cornett. 42 U.S.C. § 1983 provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Cornett has moved to dismiss the claims against him. In deciding whether to grant this Motion, three questions must be considered. First, what is the constitutional right that Wilder and Holbrook seek to invoke? Second, since under section 1983 only "state actors" can be held accountable for constitutional violations, does Cornett, as a private party, qualify? Finally, to what extent do Cornett's own constitutional rights deserve deference?

## 1.

■ In order to assert a claim under section 1983, there must be a "deprivation of a right secured by the Constitution or laws of the United States." *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir.1995) (quoting *Simescu v. Emmet County Dept. of Soc. Servs.,* 942 F.2d 372, 374 (6th Cir. 1991)). Wilder and Holbrook allege that their rights were violated by an impermissible political affiliation consideration.

■ In *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court examined a practice by the Governor of Illinois in which, in certain circumstances, state employment was limited to Republicans. The Governor's Office considered several factors in determining whether a particular person should receive a position, including whether the person voted in Republican primaries, supported the Republican party, was supported by local Republican officials, and promised future support to the party. *Id.* at 66, 110 S.Ct. 2729. The Court held that this system violated the constitutional rights of those denied employment. *Id.* at 75, 110 S.Ct. 2729. The Court stated that "promotions, trans-

fers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." *Id.* The *Rutan* decision rests the public employees' rights on the First Amendment: "The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Id.* Political affiliation may only be considered when "the government has a vital interest in doing so." *Id.* at 78, 110 S.Ct. 2729. The government may permissibly consider an applicant's political affiliation if the employment position is inherently political in nature. *Hoard v. Sizemore*, 198 F.3d 205, 212.

▮▮▮ Whether a position is inherently political is a fact-based inquiry that asks two questions: what are "(1) 'the inherent duties of the position in question' and (2) the 'duties that the new holder of that position will perform,' as envisioned by the newly elected official...." *Id.* (quoting *Blair v. Meade*, 76 F.3d 97, 100 (6th Cir. 1996)). In making the allegation that Cornett's recommendation helped "promote an unconstitutional political agenda," [R. 1 at 3], Wilder and Holbrook placed all parties on notice that they claim that the Superintendent II position was not inherently political. Whether or not the facts would ultimately support that determination is a decision best left for after discovery. Therefore, for the purposes of Cornett's Motion to Dismiss, the Court finds a sufficient allegation that Smallwood was not promoted to a political position. Consequently, consideration of political affiliation could have caused a constitutional deprivation to Wilder and Cornett.

### 2.

▮▮▮ Also, under section 1983, a party who deprives another of a right estab-lished by the United States Constitution must be acting under the color of state law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir.2003). Generally, a section 1983 action will not lie against a private individual. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). However, "[a]llegations in a plaintiff's complaint that a private citizen-defendant acted corruptly in concert with a state official may be sufficient to make out a claim that, as to the action in question, the defendant is a state actor." *Tahfs*, 316 F.3d at 591. Ordinarily, to make out a claim that a private person is a public actor, *i.e.*, acting under the color of state law, the plaintiff must be able to satisfy one of three tests utilized by the Sixth Circuit: the public function test, the state compulsion test, or the nexus test. *Id.*

> The public function test 'requires that the private entity exercise powers which are traditionally exclusively reserved to the state'.... The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison*, 48 F.3d at 195 (quoting and citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992)). "Application of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors." *Am. Postal Workers Union*, 361 F.3d at 905. This includes allegations that a private person willfully participated in an ac-

tion with a state actor. *Id.* When looking to whether a particular private defendant qualifies, a court should look at the specific facts in the particular action. *See Tahfs,* 316 F.3d at 593.

▮ Wilder and Holbrook allege that Cornett, as an individual, engaged in a conspiracy with Hall in order to effect the hiring of Smallwood. [R. 1]. They do not allege that Cornett was acting in his official capacity as a representative. [*See id.*]. Nor do they tackle the issue of whether it should matter that Cornett was a state representative at the time of Smallwood's promotion but is no longer serving in that legislative capacity. [*See id.*]. Since Cornett's capacity as a private actor has not been raised by Wilder and Holbrook, this Court need not address it. It is sufficient, at this time, to rely on *American Postal Workers Union* and determine that Wilder and Holbrook have sufficiently noted the existence of a "conspiracy" such that Cornett, as an individual, could have been acting under the color of state law.

▮ While there is generally no heightened pleading requirement for claims made under 42 U.S.C. § 1983, *Am. Postal Workers Union,* 361 F.3d at 902, a section 1983 conspiracy must be pled with some specificity. *See Farhat v. Jopke,* 370 F.3d 580, 599 (6th Cir.2004). A complaint alleging conspiracy must contain specific facts from which a conspiracy could be established. *Gutierrez v. Lynch,* 826 F.2d 1534, 1539 (6th Cir.1987). A conspiracy will exist under section 1983 when there is "an agreement between two or more persons to injure another by unlawful action." *Am. Postal Workers Union,* 361 F.3d at 905. "All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.*

Here, this inquiry begins and ends with the Complaint. The chief question is whether Wilder and Holbrook have alleged specific facts establishing a conspiracy. The only *factual* allegations contained within the Complaint that relate to Cornett are that (1) Cornett recommended Smallwood's hiring; (2) Cornett admitted recommending Smallwood; (3) Cornett wanted a political ally in the position; and (4) Cornett was motivated by his dislike of a political rival. [R. 1]. The remainder of the Complaint consists of conclusory assertions of the existence of a conspiracy, not facts specific to a conspiracy claim. [*See id.*]. Therefore, assuming, as the Court must, that the factual allegations are true, Wilder and Holbrook have, at most, alleged that Cornett made a recommendation for a political ally based on questionable motives. To the extent that a conspiracy exists in this case, it involves Cornett exercising a desire to petition the state government in support of his political party.

### 3.

Having addressed the first two questions presented, one might conclude that Cornett's Motion must fail. It may well be that after discovery evolves evidence could be developed to convince a reasonable jury that Cornett, through his recommendation, was part of a conspiracy that resulted in the violation of Wilder and Holbrook's First Amendment rights.

The Constitutional rights at stake, however, are not just those claimed by Wilder and Holbrook. Indeed, the First Amendment protects an equally important right on behalf of Cornett, one that is at the very core of a nation organized as a republic—the right to petition. James Madison, perhaps the most persuasive founder on the values presented by the First Amendment, explained that "the people may

therefore publically address their representatives, may privately advise them, or declare their sentiments by petition to the whole body; in all these ways they may communicate their will." 1 Annals of Cong. 766 (Joseph Gales ed., 1789).

The First Amendment provides, in relevant part: "Congress shall make no law ... abridging the freedom of speech ...; or the right of the people ... to petition the Government for a redress of grievances." U.S. Const. Amend. I. "[P]arties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." See Tarpley v. Keistler, 188 F.3d 788, 795–96 (7th Cir.1999). When a plaintiff alleges that its constitutional right has been violated by an exercise by the defendant of its own constitutional right, this Court must engage in a Noerr–Pennington analysis—an examination of both sides' constitutional rights—to determine whether the plaintiff can assert its claim. Id. at 795; see also Eaton v. Newport Bd. of Educ., 975 F.2d 292, 298–99 (6th Cir.1992) (applying Noerr–Pennington balancing test in section 1983 action).

The Noerr–Pennington doctrine grew out of the cases of Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Originally, the doctrine was viewed as a protection of the right to petition from the seemingly conflicting provisions of the Sherman Act. See E.R.R. Presidents Conference, 365 U.S. at 138, 81 S.Ct. 523; Eaton, 975 F.2d at 298 ("That doctrine holds that business interests may combine and lobby to influence the legislative, executive, or judicial branches of government or administrative agencies without violating the antitrust laws, because such activities are protected by the first amendment right of petition."). The doctrine has since grown into a broader protection of First Amendment rights. See, e.g., Video Int'l Prod., Inc. v. Warner–Amex Cable Commc'ns, Inc., 858 F.2d 1075, 1084 (5th Cir.1988) (applying Noerr-Pennington to section 1983 claim); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614–15 (8th Cir.1980) (applying Noerr–Pennington in zoning context). The Sixth Circuit has sanctioned the use of Noerr–Pennington, through analogy, in the context of a 1983 action. Eaton, 975 F.2d at 298. Under Noerr–Pennington, as sanctioned by Eaton, if a party's actions are protected by the First Amendment, then that party is immune to suit. Id. Few exceptions apply to this doctrine. Id.; see also Video Int'l Prod., Inc., 858 F.2d at 1084 (explaining that while a conspiracy is not enough to overcome a Noerr–Pennington immunity, a conspiracy premised on bribery may establish an actionable claim).

Here, Cornett argues that he was simply exercising his own constitutional right to engage in political activity by petitioning the government. Balanced against this is Holbrook and Wilder's constitutional right to associate. This country has a long-standing history of using political ties for the purpose of patronage. See Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). When Cornett recommended Smallwood for a promotion, Cornett was simply exercising a right arising out of the historical practice of petitioning the government. Wilder and Holbrook are well aware of this right, as Judge Smith also attempted to exercise his own right to petition, albeit through Cornett, and recommend his brother-in-law, Wilder, for the position. Foreclosure of Cornett's right to speak and petition without redress would entail a prohibition on all elected officials'

rights to recommend, which surely is not what Wilder is seeking since he too would like to benefit from that right. Additionally, under the applicable Sixth Circuit *Noerr–Pennington* approach, rights which "are protected by the first amendment . . . cannot provide the basis for [1983] liability." *Eaton,* 975 F.2d at 299 ("The defendants cannot be held liable for their actions in this case, since those actions were protected by the first amendment rights to speak freely and to *petition the government.*" (emphasis added)). Thus, Cornett's right to petition cannot form the basis of his liability.

 Furthermore, to silence the right to petition, this Court would also be forced to bar the right to association. "[T]he right of political association compromises (and is derivative of) the textual First Amendment rights—speech, assembly, petition and press—only by protecting the scope of the component parts (here, petition and speech) can we protect the amalgam." *Tarpley,* 188 F.3d 788, 796 n. 6. To the extent that the freedom of association arises in part from the freedom to petition, protection of the later freedom necessarily protects the former. "Those [like Cornett] who enter the political fray[ ] have grander, even if selfish, aspirations: they want to speak, assemble, petition or publish *in support of something.* Political association would be an empty right indeed if partisans were not free to advocate." *Id.* at 793–94. That is not to say that the "preservation of the democratic process 'may in some instances justify limitations on First Amendment freedoms.'" *Rutan,* 497 U.S. at 70, 110 S.Ct. 2729 (quoting *Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Such is the case when Congress limits individual contributions to campaigns, *see Buckley v. Valeo,* 424 U.S. 1, 14–29, 96 S.Ct. 612, 46 L.Ed.2d 659, (1976) (holding that the reason for individual contribution limits is substantially justified by

the purpose for the limit), and when the government limits the rights of its employees to engage in political activity. *See U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 564–67, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (balancing employees' rights to associate against the government's interest in regulating its employees' conduct). This is not one of those instances. To the contrary, only by protecting Cornett's right to speak and petition can this Court protect those same rights, and the right to associate, on behalf of Wilder and Holbrook.

Because the right of a partisan to petition the government cannot be lessened for the benefit of political association, Cornett's partisan recommendation is protected by his First Amendment right. As a protected form of advocacy, his recommendation cannot be found to be in violation of Wilder and Holbrook's right drawn from the same constitutional value. It, thus, fails to support a form of actionable conspiracy under section 1983.

### C.

 Finally, the Court turns to the Cabinet's claim of immunity. Sovereign immunity protects arms of the state from suits, whether the suits seek injunctive or monetary relief. *Chaz Contr., LLC v. Codell,* 137 Fed.Appx. 735, 743, 745 (6th Cir. 2005) (stating that the injunctive-relief exception to sovereign immunity created by *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), does not apply to a government body and concluding that a government body, unlike a state official, is immune from suits seeking prospective injunctive or monetary relief). In Kentucky, the determination of whether an entity is protected by sovereign immunity is the province of the judiciary. *Withers v. Univ. of Ky.,* 939 S.W.2d 340, 342–43 (Ky. 1997). The Cabinet is an arm of the state

for the purposes of sovereign immunity. *Chaz Constr. LLC,* 137 Fed.Appx. at 745; *Gritton v. Disponett,* No. 05–75, 2006 WL 2587778, at *2 (E.D.Ky. Sept.6, 2006); *Commonwealth, Transp. Cabinet v. Hall,* No.2005–CA–000862–MR, 2006 WL 3456617, at *3 (Ky.Ct.App. Dec.1, 2006).

 The Cabinet's immunity can be waived by an action of Congress pursuant to its power under the Fourteenth Amendment. *See Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Supreme Court has held that, in passing 42 U.S.C. § 1983, Congress did not intend to waive sovereign immunity. *Quern,* 440 U.S. at 345, 99 S.Ct. 1139. In addition to congressional waiver, sovereign immunity may be waived when the state chooses to do so. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). A state's waiver must be so explicit that it leaves no room for an alternate interpretation. *Id.* at 673, 94 S.Ct. 1347. In Kentucky, "[t]he General Assembly may, by law, direct in what manner and in which courts suits may be brought against the Commonwealth." Ky. Const. § 231. This has been interpreted to mean that "the state cannot be sued except upon a specific and explicit waiver of sovereign immunity." *Commonwealth v. Whitworth,* 74 S.W.3d 695, 699 (2002). Both Kentucky Courts and the Sixth Circuit have held that the Cabinet is immune to suit under section 1983. *Chaz Constr.,* 137 Fed.Appx. at 745; *Com., Transp. Cabinet,* 2006 WL 3456617, at *3. Since Wilder and Cornett have not argued that there is a specific statute that alters these holdings (nor has the Court found such a statute), the Motion to Dismiss by the Cabinet must be granted on sovereign immunity grounds.

### III.

Accordingly, for the reasons set forth herein and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. that Defendant's Motion to Dismiss [R. 9] is **GRANTED** and all claims against Howard Cornett are hereby **DISMISSED,** and

2. that Defendant's Motion to Dismiss [R. 11] is **GRANTED** and all claims against the Kentucky Transportation Cabinet are hereby **DISMISSED.**